# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

RECEIVED

2006 OCT -6  P 12: 46

| | |
|---|---|
| KRISTIN I., by and through her mother and next friend, JENNIE I., and JENNIE I. individually ) ) ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | CIVIL ACTION NO.: |
| MONTGOMERY PUBLIC SCHOOLS, ) ) | CV 2:06 CV 905-MEF |
| Defendant. ) | |

## COMPLAINT

### I. INTRODUCTION

1. This is an action brought by plaintiffs, Jennie I. and Kristin I. Plaintiffs have been adversely affected by defendant, the Montgomery Public Schools' (MPS) failure to provide Kristin with a nondiscriminatory and appropriate education, as well as certain evaluations and due process rights, in violation of the Individuals with Disabilities Education Act ("IDEA"). 20 U.S.C. §1400 *et seq.*, and § 504 of the Rehabilitation Act. 29 (§ 504) U.S.C. 794. Plaintiffs seek a permanent injunction and compensatory education from the unlawful educational practices which are in violation of such rights. Plaintiffs also seek their reasonable attorney fees for pursuing this action.

### II. JURISDICTION

## II. JURISDICTION

2. This litigation constitutes an appeal from an impartial due process hearing decision completed in accordance with 20 U.S.C. § 1415, relative to Kristin's educational program.

3. This Court has jurisdiction in accordance with 28 U.S.C. § 1331 and 20 U.S.C. § 1415(e)(4). Venue is proper pursuant to 28 U.S.C. § 1391.

4. The plaintiffs in this action have fulfilled all conditions precedent to the institution of litigation under 20 U.S.C. § 1415 *et seq.*, and 29 U.S.C. § 794. Plaintiffs exhausted their administrative remedies in accordance with 20 U.S.C. §1415.

## III. PARTIES

5. Plaintiff Kristin I. is a student with disabilities, as that term is defined by IDEA and § 504. For all times relevant to this action, Kristin I. has been eligible for services under IDEA and § 504 as a special education student residing in the Montgomery County School District. Plaintiff Kristin I. is also a qualified individual with disabilities which substantially limit at least one major life activity. 20 U.S.C. § 1401(a)(1); 29 U.S.C. § 794.

6. Plaintiff Jennie I. brings this action as an individual and as mother and next friend to daughter, Kristin I.

7.   Defendant Montgomery Public Schools is a recipient of federal financial assistance and an entity subject to suit. In accordance with IDEA and § 504, it has the obligation to assure the provisions of a non-discriminatory, free, appropriate public education in the least restrictive environment as well as certain due process procedures relative to students who are eligible for services under IDEA and/or § 504 residing in Montgomery County, Alabama, including Kristin I.

## IV.   FACTUAL ALLEGATIONS

8.   Plaintiffs reallege and incorporate by reference paragraphs 1-7 above with the same force and effect as if fully set out in specific detail hereinbelow.

9.   Kristin I. is a ten year old child with disabilities who has been enrolled as a special education student in the MPS since at least 1998. Kristin has arthrogriposis, a form of muscular dystrophy, and restrictive lung disease.[1] Kristin's arthrogriposis causes significant atrophy in her muscles; and, she has extensive contractions in her joints. Kristin's movements are extremely restricted. Kristin can move her head some and move her arms if they are low. Kristin is fed through a tube; and, she is sometimes suctioned, depending on her level of congestion. Arthrogriposis is treated

---

[1] Kristin's arthrogriposis and muscular dystrophy are non-progressive and have been present since her birth. Kristin was fed by mouth until she was four years old. Kristin spoke until age two.

via an extensive amount of physical and occupational therapy to keep Kristin as limber as possible. It is believed that Kristin may not be cognitively impaired.

10. One of Kristin's biggest needs is to communicate, learn academics and socialize with her typical peers. With the provision of an appropriate educational program, Kristin has the potential to function significantly more independently. She has the ability to learn academics and social skills. Unfortunately, MPS has failed to provide, or otherwise assure that Kristin has been provided with an appropriate educational program which would allow her the opportunity to gain such skills.

11. To be eligible for Federal financial services under IDEA, a state must assure that "all children with disabilities who are between ages three and twenty-one receive a FAPE." 34 CFR 300.122, 300.220. No child is too severely impaired to be entitled to educational services under IDEA.

12. IDEA defines "free appropriate public education" (FAPE) as "special education and related services which (A) have been provided at public expense, under public supervision and direction, and without charge, (B) meet the standards of the State educational agency, (C) include an appropriate preschool, elementary or secondary school education in the State involved, and (D) are provided in conformity with the individualized education program required under section 1414(a)(5) of this title." 20 U.S.C. § 1401(18).

13. Special education is broadly defined to include:

> ...specially designed instruction, at no cost to the parents, to meet the unique needs of a child with a disability, including-
> (i) Instruction conducted in the classroom, in the home, in hospitals and institutions, and in other settings; and
> (ii) Instruction in physical education.

34 CFR 300.26. MPS is required to provide a program which offers only a trivial or *de minimus* benefit.

14. IDEA requires that each student be comprehensively evaluated in all areas of suspected disabilities. Ala. Rule 280-8-9-.02(1) and 280-8-9-.2(5). A student must also be reevaluated at least once every three years, or more often if conditions warrant. 42 U.S.C. 1414(a)(2) "Evaluation" is defined as procedures which are used to determine whether a student has a disability and, if so, the nature and extent of her need for special education and related services. 34 CFR 300.500(b)(2).[2] Eligibility for special education related services may not be determined based on a medical diagnosis. 34 CRF 300.532, .533, .535. The term "reevaluation" generally means a comprehensive evaluation which is analogous to initial evaluation under 34 CFR 300.532.

---

[2] Reference to the 1999 Regulation implementing IDEA is made because, for the most part, those regulations were controlling with regard to persons' entitlements under IDEA.

15.     In assessing Kristin's needs, the District must ascertain Kristin's present level of performance, her educational needs and whether additions or modifications in her educational program and related services are needed to enable Kristin to progress, to the extent appropriate, in the general curriculum. *See 34 C.F.R. 300.533(a)(2).* In addition, for a student with impaired sensory, manual or speaking skills, the District must select tests which measure accurately reflects Kristin's aptitude or achievement level, rather than reflecting Kristin's impaired sensory, manual or speaking skills (unless those skills are the factors that the test purports to measure). 34 CFR 300.532(e) and (g). MPS was required to use assessments which provide relevant information that directly assists it in determining Kristin's educational needs. 34 CFR 300.532(j). Finally, MPS must review the evaluation data to determine whether any additional assessments were/are needed to identify Kristin's present level of performance, whether any additions or modifications to the special education programs and related services are need to enable Kristin to meet her goals and to participate, as appropriate, in the general curriculum. 34 CFR 300.533.

16.     One of the hallmarks of IDEA is its requirement that each student have in place an individualize education plan (IEP) to meet her unique needs. The IEP must be in effect at the beginning of each school year. 34 CFR 300.341. An IEP must expressly state the special education and related services which are to be provided to

the child which will allow the child to advance appropriately towards her annual goals, and which will allow the child to be involved in and progress in the general curriculum. 34 CFR 300.347.

17. Revisions of a student's IEP must occur periodically, but not less than annually, to determine whether a student's annual goals are being achieved. A district has an obligation to revise a student's IEP to address "any lack of expected progress toward the annual goals described in Section 300.347(a), and in the general curriculum, if appropriate." If a district is unable to implement a student's IEP, then it must revise the IEP to assure that the child receives appropriate services. 34 CFR 300.543.

18. MPS also had/has a responsibility to provide Kristin with related services, including speech and language, physical and occupational therapy, school health services and parent training. 20 U.S.C.A. §1401(a)(17).

19. MPS has/had a duty to provide Kristin with assistive technology devices and services which meet her needs. IDEA requires each public agency to insure that either assistive technology devices or assistive technology services, or both, are made available to a child with a disability, if such is required as part of the child's special education, related services, or supplementary aids and services. 34 C.F.R. § 300.308.

20. IDEA defines the term "assistive technology device" as:

any item, piece of equipment, or product system, whether acquired commercially off the shelf, modified, or customized, that is used to increase, maintain, or improve functional capabilities of a child with a disability. 20 U.S.C. § 1401(1); 34 C.F.R. § 300.5.

II.  Assistive Technology Services

21.  Assistive technology service" includes "any service that directly assists a child with a disability in the selection, acquisition, or use of an assistive technology device." This term includes:

> (a) the evaluation of the needs of such child, including a functional evaluation of the individual in the child in the child's customary environment;
>
> (b) purchasing, leasing, or otherwise providing for the acquisition of assistive technology devices by such child;
>
> (c) selecting, designing, fitting, customizing, adapting, applying, maintaining, repairing, or replacing of assistive technology devices;
>
> (d) coordinating and using other therapies, interventions, or services with assistive technology devices, such as those associated with existing education and rehabilitation plans and programs;
>
> (e) training or technical assistance for such child, or, where appropriate, the family of such child; and
>
> (f) training or technical assistance for professionals (including individuals providing education and rehabilitation services), employers, or other individuals who provide services to, employ, or are otherwise substantially involved in the major life functions of such child.

20 U.S.C. § 1401(2); 34 C.F.R. § 300.6. (emphasis added).

22. IDEA requires each public agency to insure that assistive technology devices or services are made available to a child with a disability if such is required as part of the child's special education, related services, or supplementary aids and services.

23. IDEA does not contain a predetermined listing of assistive technology devices and/or services. Rather, each situation is to be determined on a case by case basis. An augmentative communication device is a form of assistive technology and a district must provide an evaluation to determine the necessity of such device.

24. In enacting IDEA, Congress indicated a clear statutory preference for educating students with students without disabilities to the maximum extent appropriate. 20 U.S.C. § 1412(5) discusses eligibility requirements for states to receive federal funds, and it so provides that each state must have established:

> Procedures to assure that to the maximum extent appropriate, children with disabilities including children in public or private institutions or other care facilities, are educated with children who are not disabled, and that special classes, separate schooling, or the removal of children with disabilities from the regular education environment occurs only when the nature or severity of the disability is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily.

25. A child must not be removed from a typical education program solely because of any needed modifications in the typical environment. 34 C.F.R, 300.552, 34 C.F.R., 300.553 and 34 C.F.R., 300.554. In Alabama, for a student Kristin's age, placement in either a fully segregated school or a homebound program is extremely restrictive because it denies Kristin contact with typical students. Ala. Rule 290-8-9-.6(3).

26. Here, MPS has failed to comprehensively evaluate Kristin as required. MPS has further denied Kristin a FAPE, as Kristin's IEPs failed to meet IDEA's basic requirements and did not offer her a FAPE.

27. MPS failed to secure an assistive technology evaluation and the necessary assistive technology services and equipment to enable Kristin to increase her functional capacities to communicate and acquire daily living, socialization and academic skills. MPS's utilization of technology in Kristin's program was minimal and not infused throughout her day, in violation of IDEA and § 504.

28. In addition, the District failed to provide related services to include direct occupational and physical therapy, as well as speech and language services in a manner and amount reasonably designed to enable Kristin to communicate and learn academics and socialize. Despite that Kristin can only move her head some and her hands slightly, MPS failed to meaningfully offer occupational and physical therapy

services. Although Kirsten could barely communicate, MPS offered her only minimal speech and language services.

29. Kristin was absent from school, sometimes for months at a time to recover from surgery. In violation of IDEA and § 504, MPS failed to reconvene Kristin's IEP team to offer Kristin homebound services, and allowed Kristin to stay home without any educational services until April 2005. MPS' inaction is especially egregious, given that Kristin has been of mandatory school age since July 2002.

30. MPS also unnecessarily segregated Kristin and deprived her of contact with typical peers, until April 2005, when she was placed on homebound services. MPS' previous program consisted of placing Kristin in a segregated school which educated only students with significant cognitive and physical disabilities. Thus, MPS failed, and is continuing to fail, to provide Kristin with a FAPE in the least restrictive environment. In placing Kristin at the Center or at home, MPS has ignored the interrelationship between the provision of related services and Kristin's right to be educated in a least restrictive environment. Kristin's development, including her communication, academic and socialization skills, are strongly dependent on her ability to interact with students without disabilities. Placement of Kristin in a special education class in a typical school, with mainstreaming, is necessary for Kristin to receive a FAPE.

31. After several unsuccessful attempts to redress their concerns, petitioners requested an impartial due process hearing pursuant to IDEA. Hearing Officer Cole was appointed to serve as the impartial due process hearing officer. The hearing began on September 7, 2005.

32. On August 31, 2006 Cole reached a decision in this matter, finding in favor of MPS.

## V. CAUSES OF ACTION

33. Plaintiff realleges and incorporates by reference paragraphs 1-24 above with the same force and effect as if fully set out in specific detail hereinbelow.

### A. Section 504 and IDEA Violations

34. Kristin was a student with disabilities who was and is eligible for a non-discriminatory education and special education services under 20 U.S.C. § 1401, *et seq.* 29 U.S.C. § 794.

35. Defendant MPS meets the definition of a "recipient" in accordance with 29 U.S.C. § 794. Defendant also has the obligation to assure a nondiscriminatory, free, appropriate public education in accordance with 20 U.S.C. § 1400, *et seq.* and § 504 of the Rehabilitation Act.

36. Plaintiffs have been adversely affected by the practices set forth above, and have, thus, been deprived of comprehensive evaluations, a free appropriate public

...

education in the least restrictive environment, related services and assistive technology, in violation of 20 U.S.C. § 1400 *et seq.*, 29 U.S.C. § 794 *et seq.* and the Ala. Code § 16-39-1 *et seq.*

37. MPS' actions have been intentional, willful and done with malicious disregard. Such constitutes intentional discrimination against plaintiffs because of Kristin's disabilities with regard to educational programs and due process procedures under the aforementioned statutes.

38. As result of defendant's actions, plaintiffs have suffered extreme harm including, but not limited to, loss of educational opportunities and programs, and denial of due process. Kristin has failed to progress and she has regressed in certain areas. Kristin has been denied meaningful and equitable educational opportunities and programs, as guaranteed by federal and state law.

## VI. **RELIEF**

WHEREFORE, plaintiffs respectfully pray that this Court assume jurisdiction of this action and:

1. After reviewing additional evidence, conduct a modified *de novo* review of this matter, and reverse Hearing Officer Cole's Decision, finding in favor of plaintiffs.

2.     Issue a declaratory judgment that defendants's substantive educational and due process practices, policies, procedures and conditions are violative of plaintiffs' rights as secured by § 504 of the Rehabilitation Act and IDEA.

3.     Grant plaintiffs a preliminary and permanent injunction enjoining defendants, their agents, successors, employees, attorneys and those acting in concert with the defendants, from continuing to violate plaintiffs' rights under § 504 and IDEA and the ADA.

4.     Order MPS to provide plaintiffs the relief sought by plaintiffs at the impartial due process hearing.

5.     Enter an order requiring defendants to make plaintiffs whole by awarding Kristin compensatory education and/or the educational services she would have received the absence of defendants' unlawful conduct.

6.     Grant plaintiffs a declaration stating that plaintiffs are the prevailing parties in this action.

7.     Enter an award of attorney fees and costs, plus the reimbursement of the time spent pursuing the litigation necessary to secure the aforementioned attorney fees plus costs.

8.     Grant such other relief and benefits as the cause of justice may require.

Respectfully submitted,

*[signature]*

Deborah A. Mattison

**OF COUNSEL:**
**WIGGINS, CHILDS, QUINN & PANTAZIS, LLC**
The Kress Building
301 19th St. North
Birmingham, Alabama 35203
(205) 314-0500

Buddy Scott
Marsha Scott

Scott Attorneys, LLC
322 Alabama St Ste B
Montgomery, AL 36104-4208
(334) 369-0404

Counsel for Plaintiffs


**DEFENDANTS' ADDRESS (Motion to be served with Complaint):**
Montgomery Public Schools
c/o Dr. Carlinda Purcell, Superintendent
307 S. Decatur St.
Montgomery, AL 36104