## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **K. I., by and through** | ) | |
| **her mother and next friend,** | ) | |
| **JENNIE I., and JENNIE I. individually** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **CIVIL ACTION NO.:** |
| **MONTGOMERY PUBLIC SCHOOLS,** | ) | **CV 2:06-CV-905-MEF** |
| | ) | |
| **Defendant.** | ) | |

## MOTION TO AMEND COMPLAINT

**COME NOW,** the plaintiffs, by and through counsel, and moves this Honorable Court to allow plaintiffs to amend their Complaint to clarify plaintiffs' claims under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §1400 *et seq*.; Alabama's implementing statute; and § 504 of the Rehabilitation Act, 29 U.S.C. § 794. It also adds a request for compensatory damages under 29 U.S.C. § 794. The Amended Complaint is attached hereto and is incorporated herein by reference. (Attachment A). In support of this Motion, plaintiffs state the following:

1.    On October 6, 2006, plaintiffs filed their Complaint alleging they were adversely affected by defendant, the Montgomery Public Schools' (MPS) failure to provide K. I. with a nondiscriminatory and appropriate education, as well as certain evaluations and due process rights, in violation of the Individuals with Disabilities

Education Act ("IDEA"), Alabama's implementing statute, and § 504 of the Rehabilitation Act.   Plaintiffs sought equitable relief to include, *inter alia*, a permanent injunction restraining Defendant from continuing to engage in the unlawful educational practices which violate Plaintiffs' rights.  Plaintiffs also sought compensatory education and compensatory damages.  Finally, Plaintiffs sought their reasonable attorney fees for pursuing this action.

2.    Plaintiffs now seek to amend their Complaint to clarify their claims under the above-referenced statutes.  Plaintiffs have also provided updated citations, consistent with IDEA's 2004 Reauthorization.    Finally, Plaintiffs request compensatory damages under 29 U.S.C. § 794.

3.    Under Federal Rule of Civil Procedure 15(a) the Court is afforded great liberality in granting amendments to complaints.  In *Foman v. Davis*, 371 U.S.178, 182 83 S. Ct. 227, 230 (1962), the United States Supreme Court stated:

> Rule 15(a) declares that leave to amend "shall be freely given when justice so requires"; this mandate is to be heeded...  In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment,... the leave sought should, as the rules require, be "freely given."

*See also, Hester v. International Union of Operating Engineers*, AFL-CIO, 941 F.2d 1574, 1578 (11th Cir. 1991).  In fact, the Eleventh Circuit has stated that the

presumption is to allow an amendment, and that in the absence of a substantial reason to permit denial, the district court's discretion is somewhat circumscribed.

> Rule 15(a) severely restricts the district court's freedom, directing that leave to amend shall be freely given when justice so requires...This policy of rule 15(a) in liberally permitting amendments to facilitate determination of claims on the merits circumscribes the exercise of the district court's discretion; thus, unless a substantial reason exists to deny leave to amend, the discretion of the district court is not broad enough to permit denial.

*Shipner v. Eastern Air Lines, Inc.*, 868 F.2d 401, 407 (11th Cir. 1989).

4.    The actions alleged in the Amended Complaint relate back to the date of the original pleading in that the claims asserted arise out of the conduct and occurrences set forth in the original pleading.

5.    Defendant will not be unduly prejudiced by these amendments as such amendments are timely and consistent with this Court's Scheduling Order.

**WHEREFORE, PREMISES CONSIDERED**, plaintiffs respectfully request that this Honorable Court grant this Motion to Amend to their Complaint.

Respectfully submitted,

s/Deborah A. Mattison
Deborah A. Mattison
Audrey R. Channell
Attorneys for Plaintiff

**OF COUNSEL:**
**WIGGINS, CHILDS, QUINN & PANTAZIS, LLC**

The Kress Building
301 19th Street North
Birmingham, Alabama  35203
(205) 314-0500

## <u>CERTIFICATE OF SERVICE</u>

I do hereby certify that I have on March 20, 2007, filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Buddy Scott
James R. Seale
Erika P. Tatum

<u>s/Deborah A. Mattison</u>
OF COUNSEL



### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | | |
|---|---|---|
| K. I., by and through | ) | |
| her mother and next friend, | ) | |
| JENNIE I., and JENNIE I. individually | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | CIVIL ACTION NO.: |
| MONTGOMERY PUBLIC SCHOOLS, | ) | CV 2:06-CV-905-MEF |
| | ) | |
| Defendant. | ) | |

### AMENDED COMPLAINT

## I.    INTRODUCTION

1.    This is an action brought by plaintiffs, Jennie I. and K. I. Plaintiffs have

been adversely affected by defendant, the Montgomery Public Schools' (MPS) failure

to provide K.I. with a nondiscriminatory and appropriate education, as well as certain

evaluations and due process rights, in violation of the Individuals with Disabilities

Education Act ("IDEA"), Alabama's implementing statute, and § 504 of the

Rehabilitation Act. 29 (504) . 20 U.S.C. §1400 *et seq*. 29 U.S.C. 794 (Section 504).

Plaintiffs seek equitable relief to include, *inter alia*, a permanent injunction restraining

Defendant from continuing to engage in the unlawful educational practices which

violate Plaintiffs' rights. Plaintiffs also seek compensatory education and compensa-

tory damages.  Finally, Plaintiffs seek their reasonable attorney fees for pursuing this action.

## II.     <u>JURISDICTION</u>

2.     This litigation constitutes an appeal from an impartial due process hearing decision completed in accordance with 20 U.S.C. § 1415, relative to K.I.'s educational program.  It also includes a separate claim for relief under  § 504.

3.     This Court has jurisdiction in accordance with 28 U.S.C. § 1331 and 20 U.S.C. § 1415(i).[1] Venue is proper pursuant to 28 U.S.C. § 1391 K.I. has been denied meaningful and equitable educational opportunities and programs, as guaranteed by federal and state law..

4.     The plaintiffs in this action have fulfilled all conditions precedent to the institution of litigation under 20 U.S.C. § 1415 *et seq*., and 29 U.S.C. § 794.  Plaintiffs exhausted their administrative remedies in accordance with 20 U.S.C. §  1415.

## III.    <u>PARTIES</u>

5.     Plaintiff K.I. is a student with disabilities, as that term is defined by IDEA and § 504.  For all times relevant to this action, K.I. has been eligible for services under IDEA and § 504 as a special education student residing in the Montgomery

---

[1] For the sake of convenience, the citations in this complaint refer to IDEA 2004, which is substantially similar to its predecessor.

County School District. Plaintiff K.I. is also a qualified individual with disabilities which substantially limit at least one major life activity. 20 U.S.C. § 1402(3); 34 CFR § 104.4.

6.     Plaintiff Jennie I. brings this action as an individual and as mother and next friend to daughter, K.I.

7.     Defendant Montgomery Public Schools is a recipient of federal financial assistance and an entity subject to suit. MPS has the obligation to assure the provisions of a non-discriminatory, free appropriate public education in the least restrictive environment as well as certain due process procedures relative to students who are eligible for services under IDEA and/or § 504 residing in Montgomery County, Alabama, including K.I.

## IV.   FACTUAL ALLEGATIONS

8.     Plaintiffs reallege and incorporate by reference paragraphs 1-7 above with the same force and effect as if fully set out in specific detail hereinbelow.

9.     K.I. is an eleven year old child with disabilities who has been enrolled as a special education student in the MPS since at least 1998. K.I. has arthrogriposis, a form of muscular dystrophy, and restrictive lung disease.[2] K.I.'s arthrogriposis

---

[2]K.I.'s arthrogriposis and muscular dystrophy are non-progressive and have been present since her birth. K.I. was fed by mouth until she was four years old. K.I. spoke until age two.

causes significant atrophy in her muscles; and, she has extensive contractions in her joints. K.I.'s movements are extremely restricted. K.I. can move her head some and move her arms if they are low. K.I. is fed through a tube; and, she is sometimes suctioned, depending on her level of congestion. Arthrogriposis is treated via an extensive amount of physical and occupational therapy to keep K.I. as limber as possible. It is believed that K.I. may not be cognitively impaired.

10. One of K.I.'s biggest needs is to communicate, learn academics and socialize with her typical peers. With the provision of an appropriate educational program, K.I. has the potential to function significantly more independently. She has the ability to learn academics and social skills. Unfortunately, MPS has failed to provide, or otherwise assure that K.I. has been provided with an appropriate educational program which would allow her the opportunity to gain these skills.

11. To be eligible for Federal financial services under IDEA, a state must assure that "all children with disabilities who are between ages three and twenty-one receive a FAPE." 34 CFR § 300.17, 300. 103. *et. seq.*, § 300.200 *et seq.* No child is too severely impaired to be entitled to educational services under IDEA.

12. IDEA defines "free appropriate public education" (FAPE) as "special education and related services which (A) have been provided at public expense, under public supervision and direction, and without charge, (B) meet the standards of the

State educational agency, (C) include an appropriate preschool, elementary or secondary school education in the State involved, and (D) are provided in conformity with the individualized education program required under § 1414(a)(5) of this title." 20 U.S.C. § 1402(9).

     13.    Special education is broadly defined to include:

> ...specially designed instruction, at no cost to the parents, to meet the unique needs of a child with a disability, including-
> (i) Instruction conducted in the classroom, in the home, in hospitals and institutions, and in other settings; and
> (ii) Instruction in physical education.

34 CFR § 300.39. MPS is required to provide a program which offers more than a trivial or *de minimus* benefit. The program must be based on scientific research. 34 CFR § 300.35.

     14.    IDEA and Section 504, requires that each student be comprehensively evaluated in all areas of suspected disabilities. A student must also be reevaluated at least once every three years, or more often if conditions warrant. "Evaluation" is defined as procedures which are used to determine whether a student has a disability and, if so, the nature and extent of her need for special education and related services. Eligibility for special education related services may not be determined based on a medical diagnosis. The term "reevaluation" means a comprehensive evaluation which is analogous to initial evaluation. MPS has with failed to comprehensively evaluate

K.I. in accordance with IDEA and § 504. MPS failed to conduct even the most basic evaluation of K.I.'s cognitive and/or academic abilities, her need for various related services and her need for assistive technology and services. 34 CFR § 300.301 *et. seq.* 34 CFR § 104. 35; Ala. Rule 280-8-9-.02.

15.    In assessing K.I.'s needs, the District must ascertain K.I.'s present level of performance, her educational needs and whether additions or modifications in her educational program and related services are needed to enable K.I. to progress, to the extent appropriate, in the general curriculum. In addition, for a student with impaired sensory, manual or speaking skills, the District must select tests which measure accurately reflects K.I.'s aptitude or achievement level, rather than reflecting K.I.'s impaired sensory, manual or speaking skills (unless those skills are the factors that the test purports to measure). MPS was required to use assessments which provide relevant information that directly assists it in determining K.I.'s educational needs. Finally, MPS must review the evaluation data to determine whether any additional assessments were/are needed to identify K.I.'s present level of performance, whether any additions or modifications to the special education programs and related services are need to enable K.I. to meet her goals and to participate, as appropriate, in the general curriculum. 34 CFR § 300.301 *et. seq.* MPS failed to comply with these mandates.

16.    One of the hallmarks of IDEA is its requirement that each student have

in place an individualize education plan (IEP) to meet her unique needs. The IEP must

be in effect at the beginning of each school year.  An IEP must expressly state the

special education and related services which are to be provided to the child which will

allow the child to advance appropriately towards her annual goals, and which will allow

the child to be involved in and progress in the general curriculum. 34 CFR § 300.22,

300.321 *et. seq.*; Ala. Rule 280-8-9-.02, .05.  K.I.'s IEPs have been, and are still,

inadequate, nonfunctional and too limited.  They are not based on scientific research.

For example, K.I.'s IEP's have repeatedly included goals which were/are unrealistic

or which targeted skills which K.I. already possessed.  The IEPs have been essentially

devoid of any academic goals and they offered only minimal services.  The IEP's

failed to address how K.I. would progress in the general curriculum.  They failed to

contain K.I.'s present level of performance.  The majority of K.I.'s program consisted

of age inappropriate "play" activities, sitting, or napping. Indeed, K.I.'s IEP's did not

even minimally comply with IDEA's and/or Section 504's requirements.  MPS also

failed to offer K.I. a safe environment.

17.    Revisions of a student's IEP must occur periodically, but not less than

annually, to determine whether a student's annual goals are being achieved. A district

has an obligation to revise a student's IEP to address "any lack of expected progress

toward the annual goals in the student's IEP and in the general curriculum, if appropriate." If a district is unable to implement a student's IEP as written, then it must revise the IEP to assure that the child receives appropriate services. A district is also required to provide homebound instruction for student's who are unable to attend school. The district must serve all students within the mandatory school age, including K.I.. 34 CFR § 300.320 *et. seq.*; 34 CFR § 104.31 *et. seq.*; Ala. Rule 280-8-9-.05, .06.

18.    MPS also had/has a responsibility to provide K.I. with related services, including speech and language, physical and occupational therapy, school health services and parent training. However, MPS failed to provide K.I. with adequate and appropriate physical therapy, occupational therapy, school health services and speech and language therapy. Despite that K.I. can only move her head some and her hands slightly, the services which were offered were largely consultative and not based on an evaluation of K.I.'s needs. Further, MPS failed to provide K.I. with related services to include direct occupational and physical therapy, as well as speech and language services in a manner and amount reasonably designed to enable K.I. to communicate, learn and socialize. For several months at a time, MPS failed to provide any related services. 20 U.S.C. § 1402(26).

19.    MPS has/had a duty to provide K.I. with assistive technology devices and services which meet her needs.  IDEA requires each public agency to ensure that either assistive technology devices or assistive technology services, or both, are made available to a child with a disability, if such is required as part of the child's special education, related services, or supplementary aids and services. 34 C.F.R. § 300.324.

20.    IDEA defines the term "assistive technology device" as:

> any item, piece of equipment, or product system, whether acquired commercially off the shelf, modified, or customized, that is used to increase, maintain, or improve functional capabilities of a child with a disability.  20 U.S.C. § 1402(1); 34 C.F.R. § 300.5.

21.    Assistive technology service" includes "any service that directly assists a child with a disability in the selection, acquisition, or use of an assistive technology device."  This term includes:

> (a) the evaluation of the needs of such child, including a functional evaluation of the individual in the child in the child's customary environment;
>
> (b) purchasing, leasing, or otherwise providing for the acquisition of assistive technology devices by such child;
>
> (c) selecting, designing, fitting, customizing, adapting, applying, maintaining, repairing, or replacing of assistive technology devices;

(d) coordinating and using other therapies, interventions, or services with assistive technology devices, such as those associated with existing education and rehabilitation plans and programs;

(e) training or technical assistance for such child, or, where appropriate, the family of such child; and

(f) training or technical assistance for professionals (including individuals providing education and rehabilitation services), employers, or other individuals who provide services to, employ, or are otherwise substantially involved in the major life functions of such child.

20 U.S.C. § 1402(2); 34 C.F.R. § 300.6.

22.    IDEA requires each public agency to ensure that assistive technology devices or services are made available to a child with a disability if such is required as part of the child's special education, related services, or supplementary aids and services.

23.    IDEA does not contain a predetermined listing of assistive technology devices and/or services. Rather, each situation is to be determined on a case by case basis. An augmentative communication device is a form of assistive technology and a district must provide an evaluation to determine the necessity of such device. Although K.I. could not talk and could barely move, MPS failed to appropriately and timely evaluate K.I.'s need for assistive technology and services. It also failed to offer such technology services and devices appropriate to meet K.I.'s needs so as to increase her functional capacities including in the areas of communication, daily

10

living, academics, and socialization. K.I. has needed, *inter alia*, an augmentative communication device with voice output, as well as a meaningful opportunity to use any such device via the provision of switches. MPS failed to offer K.I. an adaptive table. MPS's utilization of technology in K.I.'s program was minimal and not infused throughout her day, in violation of IDEA and § 504.

24.    In enacting IDEA and § 504, Congress indicated a clear statutory preference for educating students with students without disabilities to the maximum extent appropriate.  In order for a state and local educational agency, including MPS, to receive federal funds, the entity must have established:

> Procedures to assure that to the maximum extent appropriate, children with disabilities including children in public or private institutions or other care facilities, are educated with children who are not disabled, and that special classes, separate schooling, or the removal of children with disabilities from the regular education environment occurs only when the nature or severity of the disability is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily.

20 U.S.C.  § 1412, 34 CFR § 300.114 *et. seq.* 34 CFR  § 104.31,

25.    A child must not be removed from a typical education program solely because of any needed modifications in the typical environment, including the need for any related service, to include a health services.  For a student who is over the age of

kindergarten, placement in either a segregated school or a homebound program is extremely restrictive.

26.    MPS has failed, and is continuing to fail, to provide K.I. with a FAPE in the least restrictive environment. MPS has continuously and unnecessarily segregated K.I. by requiring her to attend the Children's Center. The Center is a school which educates only students with significant cognitive and physical disabilities.[3] The development of K.I.'s communication, academic and socialization skills are strongly dependent on her ability to interact with students without disabilities. For example, development of communication skills requires frequent opportunities to "talk" with other students. However, K.I.'s class has often contained no children who could talk.    Despite her needs, K.I. has absolutely no opportunities to interact with students without disabilities.

27.    K.I. has been absent from school, sometimes for months at a time, often to recover from surgery. However, during this time, she was capable of receiving instruction and related services. In violation of IDEA and § 504, MPS failed to reconvene K.I.'s IEP team during her absences to provide K.I. homebound services. Rather, during these absences,  MPS allowed K.I. to remain home without any

---

[3] Beginning in April 2005, the District did provide K.I. with some homebound services, but the services have been inadequate.

educational services until April 2005, when it offered K.I. her first homebound program. It also previously refused to allow K.I. to attend school due to K.I.'s need to wear a brace, and it further unnecessarily excluded K.I. from school due to its incorrect and discriminatory assumption about K.I.'s health. MPS' inaction was especially egregious, given that K.I. has been of mandatory school age since July 2002. K.I.'s more recent IEPs which have provided homebound services are still inadequate and ill-designed. MPS has so far failed to consistently deliver the services.

27.    After several unsuccessful attempts to redress their concerns, petitioners requested an impartial due process hearing pursuant to IDEA. Hearing Officer Cole was appointed to serve as the impartial due process hearing officer. The hearing began on September 7, 2005 and it lasted several days. At the hearing, Plaintiffs presented substantial evidence demonstrating the various gross inadequacies of K.I.'s educational program, to include overwhelming evidence of its restrictiveness. At least two experts presented evidence that K.I.'s IEPs were inappropriate in that, *inter alia*, they were devoid of meaningful educational services and necessary related services and assistive technology. Plaintiffs also presented substantial evidence that her segregated placement was too restrictive and non stimulating. Such evidence demonstrated that with an appropriate program, K.I. has the potential to learn at considerably higher levels. The program offer by MPS was harmful to K.I..

13

28.    On August 31, 2006 Cole reached a decision in this matter, finding in favor of MPS. The decision was contrary to the evidence, as well as Section 504 and IDEA's most basic mandates.

## V.    CAUSES OF ACTION

29.    Plaintiff realleges and incorporates by reference paragraphs 1-24 above with the same force and effect as if fully set out in specific detail hereinbelow.

30.    K.I. is a student with disabilities who was and is eligible for a non-discriminatory education and special education services under IDEA and Section 504. 20 U.S.C. § 1401, *et seq.* 29 U.S.C. § 794.

31.    Defendant MPS meets the definition of a "recipient" in accordance with 29 U.S.C. § 794. Defendant has the obligation to assure a nondiscriminatory, free, appropriate public education in accordance with 20 U.S.C. § 1400, *et seq.* and § 504 of the Rehabilitation Act.

32.    Plaintiffs have been adversely affected by the practices set forth above, and have, thus, been deprived of, *inter alia*, comprehensive evaluations, a free appropriate public education in the least restrictive environment, related services and assistive technology, in violation of 20 U.S.C. § 1400 *et seq.*, 29 U.S.C. § 794 *et seq.* and the Ala. Code § 16-39-1 *et seq.* On information and believe, MPS has, and is,

failing to offer K.I. a program for the same number of hours that it provides to students who are not educated at the Children's Center.

33.    MPS' actions and it failures to comply with IDEA and  § 504, as described above  have been intentional, willful and undertaken with malicious and reckless disregard of Plaintiffs' rights.  MPS has engaged in bad faith and gross misjudgment.  MPS's actions/inactions have failed to meet even the most basic requirements contained in the aforementioned statutes.  34 CFR § 104.21, § 104.31 *et seq.*

34.    MPS's failure to provide K.I. an appropriate program have denied her meaningful and equitable educational opportunities and programs, consistent with what is provided to students without disabilities.  MPS has also failed to meet K.I.'s needs as adequately as it meets the needs of students without disabilities.  MPS's failure to educate K.I. in an academic setting populated by students without disabilities constitutes discrimination on the basis of K.I.'s disabilities.  There is no aspect of K.I.'s educational program which cannot be implemented in a regular education building, with the provision of supplemental services.  34 CFR  § 104.33 *et seq.*

34.    As result of defendant's actions, plaintiffs have suffered extreme harm including, but not limited to, loss of educational opportunities, and denial of due process.  K.I. has failed to progress and she has regressed in several  areas.

15

## VI.  **RELIEF**

WHEREFORE, plaintiffs respectfully pray that this Court assume jurisdiction of this action and:

1.      After reviewing additional evidence, conduct a modified *de novo* review of this matter, and reverse Hearing Officer Cole's Decision, finding in favor of plaintiffs.

2      Issue a declaratory judgment that defendants's educational and due process practices, policies, procedures and conditions are violative of plaintiffs' rights as secured by § 504 of the Rehabilitation Act and IDEA.

3.      Grant plaintiffs a preliminary and permanent injunction enjoining defendants, their agents, successors, employees, attorneys and those acting in concert with the defendants, from continuing to violate plaintiffs' rights under § 504 and IDEA and the ADA.

4.      Order MPS to provide plaintiffs the relief sought by plaintiffs at the impartial due process hearing, to include compensatory damages under Section 504.

5.      Enter an Order requiring defendants to make plaintiffs whole by awarding K.I. compensatory education and/or the educational services she would have received the absence of defendants' unlawful conduct.

6.    Grant plaintiffs a declaration stating that plaintiffs are the prevailing parties

in this action.

7.    Enter an award of attorney fees and costs, plus the reimbursement of the

time spent pursuing the litigation necessary to secure the aforementioned attorney fees

plus costs.

8.    Grant such other relief and benefits as the cause of justice may require.

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY.**


Respectfully submitted,

s/Deborah A. Mattison
Deborah A. Mattison
Audrey R. Channell
Counsel for Plaintiffs

**OF COUNSEL:**
**WIGGINS, CHILDS, QUINN & PANTAZIS, LLC**
The Kress Building
301 19th St. North
Birmingham, Alabama  35203
(205) 314-0500

## CERTIFICATE OF SERVICE

I do hereby certify that I have on March 20, 2007, filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Buddy Scott
James R. Seale
Erika P. Tatum

s/Deborah A. Mattison
OF COUNSEL

18