IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

K.I., *et al.*,                                      :
                                                     :
      Plaintiffs,                              :
                                                     :
-*vs*-                                               :        Case No. 2:06-cv-905-MEF
                                                     :
MONTGOMERY PUBLIC SCHOOLS,                           :
                                                     :
      Defendant.                               :

# RESPONSE TO PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO SUBMIT ADDITIONAL EVIDENCE

COMES NOW the Defendant, Montgomery Public Schools (hereinafter referred to as "MPS"), by and through its counsel of record, and moves the Court to DENY Plaintiffs' Motion to Supplement the Record. As grounds therefore, MPS states as follows:

## I.    INTRODUCTION

Hearing Officer Michael P. Cole heard the testimony of Plaintiffs' four experts, including Dr. Laura Vogtle and Donna Locke, during the 11 days of the administrative hearing from September 7, 2005 to May 8, 2006. Plaintiffs' experts testified regarding their opinions of the appropriateness of K.I.'s program at the Montgomery Public Schools' Children's Center and K.I.'s needs in developing an appropriate program. Hearing Officer Cole made the following determination of Plaintiffs' experts' opinions in his Due Process Decision:

> ***The Petitioner's criticisms of the Child's program consisted chiefly of opinion evidence offered by witnesses who had done little, if any, actual testing or even extended observation of the Child.*** Although perhaps useful in some broad sense to an understanding of instructional methodologies, their "findings" regarding the Child were not the product of an actual evaluation of the Child as much as they were general observations, impressions, and statements of personal pedagological preferences and philosophies. In general, the Petitioner's experts' reports were qualified, conditional in nature, and bereft of concrete findings or specific recommendations tailored to the Child's particular and unique needs. ***Petitioner's experts have never observed the Child in the classroom setting.*** Virtually all spoke of strategies and activities that "might" prove effective for the Child. ***Petitioner's experts' opinions related to maximizing the Child's potential, which is not required by IDEA.***

(Due Process Decision, p.264) (emphasis added).  Hearing Officer Cole found it important that Plaintiffs' experts failed to observe K.I. in the classroom.  Dr. Vogtle and Donna Locke finally observed K.I. in her classroom on May 18, 2007, two years after Plaintiffs filed their request for a due process hearing.  Plaintiffs now seek to introduce additional evidence allegedly of K.I.'s needs, K.I.'s progress since the hearing and the appropriateness of her educational program.   MPS submits that this proposed additional evidence is an attempt by Plaintiffs to "clean up" or "patch holes" in the administrative record and address the credibility issues of their experts.  Moreover, the evidence is due to be excluded because it is cumulative, repetitive, bolstering of existing evidence, and irrelevant as this Court has extensive, comprehensive evidence from the administrative hearing upon which to base its decision in this case.

## II.    STANDARD FOR ALLOWING ADDITIONAL EVIDENCE

Administrative decisions are to be given "due weight" according to the Supreme Court because essentially the court is not to substitute its own judgment for those of educators. *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176 (1982).  Although pursuant to 20 U.S.C.A. § 1415(I)(2)(B)(ii) the Court "shall hear additional evidence at the request of a party," there is no guidance in the *Individuals with Disabilities Education Act* ("IDEA")[1] as to the standard the federal court should apply when determining the admissibility of "additional evidence."

The first case to interpret the IDEA's "additional evidence" language was *Town of Burlington v. Dep't of Educ. of Mass.*,  736 F.2d 773 (1st Cir. 1984), aff'd on other grounds, 471 U.S. 359 (1985). The *Burlington* court interpreted the term "additional" in the ordinary sense of the word, to mean "supplemental." *Id.* at 790. "Thus construed, this clause does not authorize witnesses at trial to repeat or embellish their prior administrative hearing testimony..." *Id.*  The court believed its

---

1   MPS is referring to the *Individuals with Disabilities Education Act* which was the statute in effect at the time Plaintiffs filed their request for a due process hearing and the statute applied by the hearing officer during the hearing and in the Due Process Decision.  Although Plaintiffs continue to cite to the reauthorized Act (*Individuals with Disabilities Education Improvement Act*), the statute in effect at the time of the hearing is not retroactive and should have no impact on this case. *See M.T.V. v. Dekalb County Sch. Dist.*, 446 F.3d 1153 (11th Cir. 2006); *Lawrence Township Bd. of Educ. v. N.J.*, 417 F.3d 368 (4th Cir. 2005).

interpretation was supported by the fact that it "structurally assists in giving due weight to the administrative proceeding." *Id.*  The reasons a party may seek the opportunity to present evidence varies and may include: gaps in administrative hearing transcripts due to mechanical failure; unavailability of the witnesses during the administrative hearing; improper exclusion of evidence by the administrative agency; or evidence occurring after the hearing and is relevant to the case. *Id.*  The *Burlington* court further recognized that "an administrative hearing witness is rebuttably presumed from testifying at trial" and exclusion of the additional evidence would be the appropriate outcome in a majority of cases. *Id.* at 790, 791.

> In ruling on motions for witnesses to testify, a court should weigh heavily the important concerns of not allowing a party to undercut the statutory role of administrative expertise, the unfairness involved in one party's reserving its best evidence for trial, the reason the witness did not testify at the administrative hearing, and the conservation of judicial resources.

*Id. at* 791.

The Eleventh Circuit adopted the language of the *Burlington* case in *Walker County Sch. v. Bennett*, 203 F.3d 1293 (11th Cir. 2000), and *Sch. Bd. of Collier County, Fla. v. K.C.*, 285 F.3d 977 (11th Cir. 2002).  In *Walker*, the court rejected a request to admit additional evidence after finding that the evidence was cumulative as many of the witnesses "had already testified to the same general subject matter at the administrative hearing, and that the proposed testimony of several of the remaining witnesses was already in the record in the form of their written reports." *Id.* at 1296.  The court concluded that allowing this additional evidence "would not only be cumulative but would undercut or unduly minimize the statutory role of the administrative process thereby resulting in an unnecessary expenditure of judicial resources." *Id.* at 1297.  As cited by many future opinions on the additional evidence provision of the IDEA, "the determination of what is additional evidence must be left to the discretion of the trial court which must be careful not to allow such evidence to change the character of the hearing from one of review to a trial *de novo*." *Collier*, 285 F.2d at 981 (*citing Walker*, 203 F.3d at 1298).

III. **THE COURT SHOULD NOT ALLOW PLAINTIFFS' ADDITIONAL EVIDENCE AS IT DOES NOT MEET THE STANDARDS OF THE *WALKER* AND *COLLIER* CASES**

A cursory review of *Plaintiffs' Memorandum in Support of Plaintiffs' Motion for Leave to Submit Additional Evidence* demonstrates that Plaintiffs' proposed additional evidence is cumulative, repetitive and is merely embellishing or repeating prior testimony. In fact, Plaintiffs' additional evidence will be essentially the same testimony as in the administrative hearing since Plaintiffs expect their experts to give testimony as to K.I.'s needs and an ideal program to meet her needs. Obviously, Plaintiffs are trying to patch up holes in the administrative record as Hearing Officer Cole was not impressed with Plaintiffs' experts' opinions at the due process hearing.

*Springer v. Fairfax County Sch. Bd.*, 134 F.3d 659 (4th Cir. 1998), discussed a party trying to patch up holes in the administrative hearing by introducing additional evidence. In *Springer*, the court found that it was not an abuse of discretion for the district court to grant the school board's motion in limine to exclude live testimony from the child's psychologist. In excluding such evidence, the court stated that "a lenient standard for additional evidence would have the consequence of making the whole IDEA process more time consuming, as parties scrambled to use the federal court proceeding to patch up holes in their administrative case." *Id.* at 667. Further, the "district court's decision to exclude the evidence properly encourages thorough administrative review of special education disputes." *Id.*

Similarly, Plaintiffs are clearly trying to "clean up" or "patch up holes" in the administrative record by now having their experts observe K.I. in the classroom. Dr. Vogtle admitted that it was important to observe K.I. in her environment at school. (Tr., p.1124). However, neither prior to nor during the time of the administrative hearing, Plaintiffs' experts failed to observe K.I. in the classroom at MPS's Children's Center or observe her at the school K.I. attended to receive services in a summer program. (Tr., pp.1105, 1118). Rather, Dr. Vogtle visited MPS's Children's Center in August 2005 for two hours and spent approximately 45 minutes in the classroom while the class was having circle time. (Tr., p.1105). K.I. was not in attendance at the Children's Center at that

time. (Tr., p.1105). Dr. Vogtle did not discuss K.I.'s academics and did not discuss all of K.I.'s special education teacher's equipment in the classroom. (Tr., pp.1108-1109). Dr. Vogtle and K.I.'s special education teacher talked about K.I. for approximately 15-20 minutes. (Tr., pp.1103-1104). Dr. Vogtle did not talk to K.I.'s speech therapist, physical therapist or an occupational therapist with the school system, nor did she ask to speak to any of these individuals. (Tr., p.1107). During the same time period in June 2005 that Dr. Vogtle was in Montgomery for K.I.'s evaluation at Children's Rehabilitative Center, K.I. was attending school at Vaughn Road Elementary for summer services. (Tr., p.1123). However, Dr. Vogtle also did not observe K.I. at Vaughn Road Elementary. (Tr., p.1123; Due Process Decision, pp.122-148).

Donna Locke testified at the due process hearing that she did not observe K.I. in the classroom at the Children's Center. Rather, Ms. Locke worked with K.I. for two hours during her evaluation on June 1, 2005 at Children's Rehabilitative Center which is not a part of the school system. (Tr., p.636). As with Dr. Vogtle, Ms. Locke testified as to her opinions of K.I.'s needs and an appropriate program for K.I. Ms. Locke was not aware of the number of absences that K.I. had since she attended Montgomery Public Schools. (Tr., p.648). If she learned that K.I. had been absent from school numerous times and her attendance was very sporadic, she believed that such would have an impact on the educational program that was provided to K.I. (Tr., p.648). During her testimony Ms. Locke admitted that she did not talk to K.I.'s homebound teacher, nor did she know if there was a teacher. (Tr., p.642). She did not talk to K.I.'s special education teacher at the Children's Center about K.I. or to K.I.'s teacher from her summer program. (Tr., p.643). She has never talked to anyone in the school district's special education department about K.I. (Tr., p.643). She did not talk to K.I's speech language pathologist at the school and did not know K.I. had one. (Tr., p.643). She did not review the speech language pathologist's records. (Tr., p.643). Ms. Locke testified that, other than reviewing the IEP, she does not know specifically what K.I.'s special education teachers or speech language pathologist were doing with her day-to-day nor did she ever try to find out. (Tr., pp.643-644). She did not know whether K.I. used switches in the classroom

at the Children's Center. She did not know whether K.I. ever worked with switches with the school's speech language pathologist. (Tr., p.644). Despite not obtaining any of this information or trying to observe K.I. in the classroom prior to or during the administrative hearing, Ms. Locke provided the hearing officer with her numerous opinions of K.I. (Due Process Decision, pp.98-111).

In addition to trying to patch up holes in the administrative proceeding, Plaintiffs' requested submission of additional testimony by Dr. Vogtle, Ms. Locke and Ms. West is clearly cumulative and repetitive of previous testimony. Cases which address whether additional evidence is cumulative or bolstering include *Marc V. v. N.E. Indep. Sch. Dist.*, 455 F.Supp.2d 577 (W.D. Tex. 2006). In *Marc V.*, the parents sought to introduce additional evidence in the form of designated fact witnesses and a expert witness who did not testify in the administrative hearing. Because the Fifth Circuit had yet to interpret the IDEA's additional evidence provision, the court examined the *Burlington*, *Walker*, *Collier* and *Springer* cases, *supra*. Applying the additional evidence standard cited in these cases, the *Marc V.* court found that the plaintiffs "failed to provide 'solid justification' for supplementing the record." *Id*, 455 F.Supp.2d at 590. The administrative record was voluminous and the hearing officer heard testimony from 18 live witnesses and admitted numerous exhibits. *Id.* The court simply did not need additional evidence to determine the issue in the case. *Id.* Consequently, the parents' evidence was excluded because it was cumulative, irrelevant or bolstering of existing evidence. *Id.* at 589.

Even assuming Plaintiffs' additional evidence is offered for the purpose of demonstrating K.I.'s progress, numerous cases exclude evidence in similar circumstances. For example, *Lillbask v. Sergi,* 193 F.Supp.2d 503 (D. Conn. 2002), is an IDEA case involving whether the child's placement at a special needs center was an appropriate placement. In *Lillbask*, the guardian of the child sought to introduce evidence of the child's current progress at his school. *Id*. The guardian argued that evidence of the child's progress was relevant to the school board's decision to place him at the special needs center. *Id.* In determining whether the administrative record was sufficient to evaluate the hearing officer's decision, the court noted the lengthy due process hearing and extensive

transcript of the hearing. *Id.* The plaintiff had previously tried to compel discovery as to the child's current progress and the court held:

> The claim here is not whether [the child] is currently progressing appropriately at [his current school], but whether he was accorded the procedural protections required by federal and state law either in the administrative hearings or by the time Plaintiff filed her complaint herein. To hold otherwise would transform this case into an ongoing review of [the child's] educational status until he is twenty-one.

*Id.* at 506. The court determined that plaintiff's additional evidence of the child's progress was inadmissible and, accordingly, the court denied the plaintiff's motion to submit evidence. *Id.* at 519.

In a more recent case, *West Platte R-II Sch. Dist. v. Wilson*, 439 F.3d 782 (8th Cir. 2006), the Eighth Circuit Court of Appeals found that it was not an abuse of discretion to preclude a school district from supplementing the administrative record with evidence relating to the progress and status of the child subsequent to the due process hearing. According to the *West Platte* court:

> the IDEA permits a reviewing court to admit additional evidence to supplement the record if a party has a solid justification for doing so. Rendering a decision on the record compiled before the administrative agency, however, is the norm.

*Id.* at 785 (*citing Indep. Sch. Dist. No. 283 v. S.D.*, 88 F.3d 556, 561 (8th Cir. 1996)). Because the school district failed to provide a solid justification and due to the "vast and detailed administrative record that was compiled," the district court properly excluded the additional evidence of the child's progress. *Id.*

The court also excluded evidence of progress in *Burks v. Bogalusa City Sch. Bd.*, 1999 WL 627398 (E.D. La. Aug. 1999). In *Burks*, on appeal of the hearing officer's decision, the parents of a child sought introduction of additional evidence including an independent evaluation of the child subsequent to the administrative hearing which the parents contended would determine the needs in various areas. 1999 WL 627398 at *5. The school system argued that the plaintiffs were attempting to litigate the child's new education plan based on the child's present condition, instead of the validity of the education plan prepared two years previously. *Id.* In response, the court stated:

> While the court has discretion to introduce new expert testimony for the pur-
> pose of bringing the Court up to date on the child's progress from the time of
> the hearing to the trial, a lenient standard for the introduction of such evidence
> "would have the consequence of making the whole IDEA process more time
> consuming, as parties scrambled to patch up holes in their administrative
> case."

*Id.* (citing *Burlington*, 736 F.2d 773, 791 and *Springer*, 134 F.3d 659, 667). Accordingly, the

evidence of the new, independent evaluation of the child was not permitted. *See also Sch. Dist. of*

*Wis. Dells v. Z.S.*, 184 F.Supp.2d 860, 874 (W.D. Wis. 2001) (excluding expert reports of the child

that were prepared after the administrative hearing because they would change the character of

the hearing "from one of review to a *trial de novo*").

Plaintiffs further assert their experts will testify regarding K.I.'s needs and the appropriateness

of K.I.'s current educational program. Such additional evidence is also due to be excluded. In

*Gwinnett County Sch. Dist. v. J.B.*, 398 F.Supp.2d 1245 (N.D. Ga. 2005), the parents of the child

sought to introduce additional evidence of the child's need for related services including occupa-

tional therapy, physical therapy, speech therapy and extended school year services to establish

that these services were part of the child's free appropriate public education. The parents of the

child argued that admission of the additional evidence was not cumulative or duplicative. *Id.* at

1272. The court disagreed finding that the administrative record contained ample evidence of the

child's needs and there was adequate opportunity to present such evidence at the due process

hearing. *See also M.S. v. Fairfax County Sch. Bd.*, 2006 WL 2376202 (E.D. Va. Aug. 2006)

(excluding the parents' additional evidence because there was ample testimony presented at the

administrative hearing regarding the child's needs and the parents' expert's opinion summarized

or critiqued various information).

Many of the cases cited by Plaintiffs are clearly distinguishable. For example, in *Hernandez*

*v. Bd. of Educ. of City of Chicago*, 2001 WL 477222, (N.D. Ill.), the parents of the child identified

two experts as additional witnesses, neither of whom testified during the administrative hearing.

The court allowed one of the parents' experts to testify because he was not allowed to testify

previously. The court allowed the other expert to testify because he was the new psychologist for

the school and the psychologist's testimony at the previous administrative hearing was outdated. *Id.* at \*4. In *Metropolitan Bd. of Educ. of the Metropolitan Gov't Nashville and Davidson County v. Bellamy*, 116 Fed.Appx. 570 (6th Cir. 1999), the Sixth Circuit found that the district court properly allowed evidence of additional testimony because the experts did not testify at the administrative hearing, the expert's testimony supported (rather than undercut) the administrative law judge's findings and helped the district court judge make a determination, and the plaintiffs did not have the opportunity or the resources for additional evaluations of the child prior to the administrative hearing. The court in *Metropolitan* pointed out that a district court may not "admit evidence to rule on issues beyond those presented" to the administrative law judge as "this approach balances IDEA's mandate that courts consider additional evidence with the requirement that the parties exhaust their administrative remedies. *Id.* at 575.

Other distinguishable cases cited by Plaintiffs include *Russell v. Jefferson Sch. Dist.*, 609 F.Supp. 605 (D.C. Cal. 1985), and *Mr. I. v. Maine School Administrative Dist. No. 55*, 2004 WL 2397402 (D. Me. 2004). In *Russell*, the court allowed evidence of a detrimental change in the child's physical condition. *Id.* at 608. The child's orthopedic surgery occurred after the administrative hearing; however, the court found that it was relevant to determine the "impact of that operation on [the child's] future education." *Id.* In *Mr. I*, the court allowed testimony of the child's mother limited to the child's emotional status while not in school during the summer and the child's experiences and emotional status at the school. *Mr. I.*, 2004 WL 2397402 at \*1-\*2. The court also permitted additional evidence of an expert psychologist whom the school district refuted in its post-hearing brief, without giving the parents an opportunity for rebuttal because the parties' post-hearing briefs were filed simultaneously. *Id.* at \*4. *See also Summer H. v. Hawaii Dep't Educ.*, 2007 WL 1153807(D. Hawaii 2007) (allowing additional evidence of expert reports because the experts did not testify at the administrative hearing due to the parents' inability to afford the costs or the experts had not finished their evaluation). Clearly, the cases cited by Plaintiffs do not support the submission of additional evidence.

Plaintiffs' Memorandum contains inaccuracies regarding the testimony at the due process hearing. Notably, Plaintiffs state on page 6 of their Memorandum that Dr. Makris "testified confirming K.I.'s medical condition did not require her placement at the Children's Center." However, Plaintiffs never asked Dr. Makris specifically about K.I.'s placement at the Children's Center. Rather, the administrative hearing transcript of Dr. Makris' testimony regarding school and K.I.'s medical condition reads, in pertinent part, as follows:

Q.    ...As you probably know, there is an issue as to the appropriateness of K[.I.] attending a special education classroom in a regular school building where she would likely be mainstreamed for part of the day, perhaps during extracurricular activities, perhaps during assemblies, et cetera. Assume, if you will, that the school has one general school nurse but would have another school nurse just in the event that the school nurse is out sick for the day or otherwise disposed with another child. Is there any reason from a medical perspective -- and I understand you're a physician not an educator; am I right on that?
A.    I am.

Q.    Is there any reason from a medical perspective that you would tell Ms. I[.] not to place K[.I.] in that environment?
A.    **I think that wherever K[.I.] is it's important that there is somebody there who is able to respond to a problem if it arises, if she needs to be suctioned, that type of thing. As long as there is an individual there who is familiar with K[.I.] and her medical needs, who can handle those medical needs, then I think she can be in that environment**.

(Tr., pp.2360-2361) (emphasis added).

Q.    Are you aware that sometimes when K[.I.] is at home, she will spend time either with her father, who is not a nurse, or she will spend extended periods of time -- this is like when mother is working -- with mother's fiancee, who is also not a nurse?
A.    Yes.

Q.    Any problem with that?
A.    No. Can I just clarify?

Q.    Of course.
A.    Again, it's important that whoever provides -- **who is with K[.I.] knows her medical condition and is able to provide her with appropriate care just like any other child**. I wouldn't leave my child with somebody who was incapable of caring for my child. **K[.I.], she has to have someone who can care for her**.

Q. You're not familiar with nursing regulations that pertain to school districts, are you?

A. As far as -- what **I am familiar with is that children with special needs should be in school. And that schools are required to provide the services so that they can be in school. As far as the specifics regarding how many nurses per school or per child, no, ma'am**.

Q. Or nursing regulations as they pertain specifically to school systems --

A. No, ma'am.

Q. -- as far as what a nurse can do and what a teacher can do and that type thing?

A. (Witness Indicating.) **No, ma'am**.

(Tr., pp.2382-2384) (emphasis added).

Plaintiffs' Memorandum also contains inaccurate references of the expertise and teaching methods utilized by K.I.'s special education's teacher, Annie Cartwright. Specifically, page 19 of Plaintiffs' Memorandum states that "Cartwright admitted she did not have an adequate expertise in utilizing assistive technology." A review of the administrative hearing transcript pages cited by Plaintiffs demonstrates that Ms. Cartwright testified that she was not familiar with various certifications Plaintiffs' counsel asked her about and testified that she worked with a physical therapist and occupational therapist in trying a variety of switches mounted in various ways for K.I. (Tr., pp.216-217). The evidence clearly shows that Ms. Cartwright had the adequate expertise to address K.I.'s assistive technology needs and Ms. Cartwright never testified otherwise.

At the administrative hearing Dr. Vogtle testified that when she works with different switches, she does a sort of trial and error to see what works for K.I. (Tr., pp.990-991). When trying to determine an appropriate switch, she is required to try various switches, some of which would work and some which would not. (Tr., p.1022). Once she determined which switch is the correct one, she had to determine placement, which also requires trial and error. (Tr., pp.1003-1004).

Donna Locke testified at the administrative hearing that when she works with K.I., they work with activation of various switches to see what movements are most reliable and easiest for K.I. to accomplish. (Tr., p.636). When she works with different switches, she does a sort of trial and error to see what works for K.I. (Tr., p.636). When trying to determine an appropriate switch, she

is required to try various switches, some of which would work and some which would not. (Tr., pp.636-637). Once she determined which switch is the correct one, she had to determine place-ment, which also requires trial and error. (Tr., p.638). A button switch may work well in one place, but a credit card switch may work well in another place. (Tr., p.637).

Ms. Cartwright's testimony demonstrated her experience and the proper method of deter-mining the appropriate assistive technology devices for K.I. Ms. Cartwright testified that she is aware of many assistive technology devices, including switches such as a slanted incline switch, a release switch, grasp switches, sensor switches, a Big Mac switch, a Big Red switch, wobble switches, screen switches, a foot pedal switch, plate switches, an ultimate switch, a pillow switch, a string switch, picture switches, switches that have prerecorded voice messages, and switches hooked up to modules for lollipop and jelly bean switches. (Tr., pp.99-172). Ms. Cartwright tried a variety of switches with K.I. Ms. Cartwright testified that identifying a switch for a child involves observation (*i.e.*, observing a child in different positions) using switches in many different ways and finding switches that work in one position. (Tr., p.169). Ms. Cartwright looks at using a switch for a child on a social or functional manner. (Tr., p.170). The type of switches she uses will vary based on the activity she presents. (Tr., p.170). Accordingly, Ms. Cartwright utilizes the same methods for determining assistive technology as those identified by Dr. Vogtle and Ms. Locke.

All of this testimony shows there is ample evidence from the due process hearing for the court to reach a decision as to the issues in this case. Most importantly, Hearing Officer Cole's Due Process Decision identifies a credibility issue as to Plaintiffs' experts. (Due Process Decision, p.264). Hearing Officer Cole noted the Plaintiffs' experts "had done little, if any, actual testing or even extended observation of K.I.," failed to observe K.I. in the classroom setting and the experts' opinions related to maximizing K.I.'s potential, which is not required by IDEA. In fact, Plaintiffs' counsel previously discussed in a conference call with the Court that Plaintiffs' experts visiting K.I.'s classroom was necessary due to the hearing officer questioning these experts' credibility. As the *Walker* court stated, "The Court should look with a critical eye on a claim...that the credibility of a

witness is a central issue. The claim of credibility should not be an 'open sesame' for additional evidence." *Walker County Sch. v. Bennett*, 203 F.3d 1293, 1298 (11th Cir. 2000).

## IV. CONCLUSION

Although additional evidence may be presented to the court pursuant to 20 U.S.C. § 1415(e)(2), this is not a blank check for the admission of any evidence that a party wishes to submit.   Rather, as the *Walker* and *Collier* cases provide, allowing additional evidence which is cumulative may undercut or unduly minimize the statutory role of the administrative process.  Such evidence may change the character of the hearing from one of review to a trial *de novo*.  As in the cases in MPS's Response, Plaintiffs have failed to demonstrate that their evidence meets the approved reasons for supplementation.  Accordingly, Plaintiffs' Motion to Supplement the Record is due to be denied.

RESPECTFULLY SUBMITTED this the 9th day of July, 2007.

MONTGOMERY PUBLIC SCHOOLS,
Defendant,


By: _/S/_   Erika P. Tatum_____
    James R. Seale (3617-E-68J)
    Erika Perrone Tatum (1983-M-66E)
    HILL, HILL, CARTER,
        FRANCO, COLE & BLACK, P.C.
    Post Office Box 116
    Montgomery, Alabama 36101-0116
    334.834.7600
    334.263.5969 fax
    E-mail: jrs@hillhillcarter.com
    E-mail: etatum@hillhillcarter.com
    Counsel for Defendant
    wwm/6630.0174/f:Response-Additional Evidence Submittal.wpd

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that I have this date electronically filed the foregoing *Response to Plaintiffs' Memorandum in Support of Motion for Leave to Submit Additional Evidence* with the Clerk of the Court for the United States District Court, for the Middle District of Alabama, using the CM/ECF system which will send notification of such filing to: Deborah A. Mattison, Esquire (dam@ wcqp.com) and C.L. (Buddy) Scott, Esquire (buddy.scott@scottattorneys.com); this the 9th day of July, 2007.

/S/  Erika P. Tatum